## T. G. MORTON *v.* W. J. FULLENWEDER.

## THOS. McCORMICK *v.* THOS. G. MORTON.

**Promissory Notes — Manner of Computing Interest.**

The legal manner to calculate interest on a note is down to the first payment, and, if the payment be equal to or larger than the interest, apply the payment first to the discharge of the interest and apply the remainder to a discharge of the principal, as a creditor has the legal right to have the interest discharged before the principal shall be reduced.

**Novation — Legal Tender — Gold and Silver.**

There cannot be a novation of contract, because nothing but gold and silver coin can be made legal tender. Neither can a creditor claim a novation, where he does not in a reasonable time offer to perform the contract.

**Commissioner's Report — Judgment on Notes not Included in Petition.**

It is error to include in a commissioner's report the amount of one of a series of notes given for the purchase of land, where said note is not included in the petition, nor referred to in an amended pleading.

APPEAL FROM SHELBY CIRCUIT COURT.

April 18, 1867.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Thos. McCormick is proven to be of feeble mind, so much so as to render him an easy prey to the artful and designing, especially by those in whom he reposed confidence. T. G. Morton was the representative of the estate of McCormick's deceased brother under whose will he was the main devisee. Morton seems to have been his confidential friend and adviser, and had much influence over him.

In 1859 McCormick sold to Coombs the tract of land of about 600 acres devised to him by his brother at $40 per acre, or $24,000, $4,000 of which was paid, the remainder to be paid in equal annual installments of $4,000 each. Notes were not then executed because there was an undecided, existing contest as to the testator's will.

Subsequently to Coombs' purchase but before the contest about the will was decided, Morton bought of Coombs 510½ acres of this land, and was to pay $4,000 down and the remainder in four installments of $4,000 each and the additional $420 January 1, 1865, but no payment or notes were then made or given. Afterward Morton arranged with McCormick to execute seven instead of four notes payable annually without interest which reduced the annual payments from $4,000 to $2,917.14, and involving an actual loss of the interest on the whole amount for the extended time which alone would indicate a want of properly understanding his own interest by McCormick as no consideration appears for this extension.

McCormick received an assignment of three notes from Coombs and surrendered the obligation of the latter. These notes were executed by Morton to Coombs October 11, 1860, who assigned them at the same time to McCormick. April 9, 1862, Morton seems to have reduced one of the notes by payment and gave a new note due one day after date of $2,031.14.

August 18, 1863, McCormick assigned this and the three notes respectively due January 1, 1861, 1862, and 1863 for $2,917.14 each to Fullenweder. McCormick gave to Morton a receipt for $420 — dated January 21, 1860 — which expresses " I am to account for in settlement," which seems to be the additional $420 of Morton's purchase from Coombs over and above the amount due by Coombs to McCormick, but as this was not to be paid until January 1, 1865, it is hard to perceive why Morton should pay it nearly five years in advance.

August 20, 1865, Fullenweder brought suit on these notes assigned to him, and McCormick sued on the remaining notes of Morton as they respectively fell due, save the last one. Morton answered and set up for defense the $420 receipt dated January 21, 1860, also of $2,917 by receipt dated February 28, 1861, and another receipt dated February 25, 1863, for $240, and also $300 the receipt of which is lost, but this receipt was afterward found. Also set up that early in the year of 1863 in consideration that he, defendant, would pay McCormick $1,700, $1,000 in Kentucky Banks paper or a premium of 10 per cent. thereon by the 1st of March, 1863, he, McCormick, agreed to extend the time on the whole debt so as to make the payments $2,000 annually, the first to be paid March 1, 1864, and March 1st every succeeding year,

and that he made the payment of the $1,700 as agreed, and that $200 of the last receipt was paid on the debt and $100 as the 10 per cent. premium on the $1,000 to be paid in paper of the Bank of Kentucky, he having paid "Greenbacks," and that afterward McCormick fraudulently assigned said notes to Fullenweder to avoid this contract, and not for a valuable consideration, which he made a cross-petition against both McCormick and Fullenweder. In this he does not offer to execute new notes payable as he avers this new contract to be nor does he assign any reason for not having previously done so; he does say the notes were not present when the arrangement was made and was not then to be executed but was to be soon thereafter. The same defense is set up to all the suits, and on motion of Morton they were transferred to the equity docket.

March 8, 1866, Morton filed an amended answer and paid into court $6,367.50 in legal tender treasury notes and claimed that they should be received in discharge of the altered contract.

McCormick in his answer sets up the feeble condition of his mind, sets out that the first change in the notes was by the undue influence of Morton over him and fraudulently obtained by him without consideration to his detriment of $1,461.86 in the loss of interest alone, and asks for judgment against Morton for it. He sets up that the $420 receipt had been settled by the reduction of the first note and its renewal with the note for $2,031.14 dated April 9, 1862. That the receipt for $2,917 February 21, 1861, was fraudulently obtained and nothing paid by Morton, that the $1,000 paid by Morton to Bullock & Co. were included in the credit for $1,700 entered on the note due January 1, 1861, as of February 19, 1863; that the $300 credit set up as the last receipt were likewise included in it. He denies the new contract set up by Morton to extend the credits so as to make the annual payments $2,000, denies he ever understood or that he agreed to do any such thing in consideration that Morton would pay him $1,000 in Kentucky Bank paper or as a premium of 10 per cent. thereon and $700 in "Greenbacks" in March, 1863. The cause was referred to the master to take proof, report balance sheet, etc., who reported a balance due Fullenweder on October 11, 1866, of $11,606.01 and to McCormick of $1,109.48, upon which the court rendered judgment and from which Morton took an appeal and McCormick a cross-appeal. The commissioner and court rejected

Morton's claim for his $420 receipt and allowed only $1,000 for payment of the note to Bullock & Co. of the $2,917 receipt.

The seven notes executed by Morton to Coombs for $2,917.14 amount to the exact sum of his purchase of the 510½ acres of land and as these notes are dated October 11, 1860, nearly ten months subsequent to the date of said receipt for $420, of January 21, 1860, and there can be no reason found in the record why Morton should pay this $420 so long in advance, and especially is there none why he subsequently gave his notes for the same amount, nor is there any reason perceived why he should not have gotten credit for it when he reduced his first note with McCormick and renewed it for the remainder due in April, 1862, if indeed he had ever paid this $420, to McCormick. As Morton's purchase from Coombs amounts to $20,420, whilst Coombs owed McCormick only $20,000, we can see why some kind of paper would be given by McCormick acknowledging his indebtedness to Coombs for this $420, when the notes should be collected, unless he paid it in some way. It is very easy to perceive how a man of McCormick's want of understanding might be induced to execute any kind of paper in such a complication; notwithstanding McCormick's attempt to explain how this receipt was settled he then evidently did not understand the transaction and we do not feel bound to adhere strictly to the confessed account given by one so illy qualified to give an intelligent statement of the various transactions. We are satisfied the rejection of this receipt was right.

The receipt dated February 28, 1861, for $2,917 set up by Morton after acknowledging the reception of $2,917 says: " and said Morton is to pay W. C. Bullock & Co. $1,000 assigned by said Alec Coombs, which said McCormick is to give credit on land notes." This payment to Bullock & Co. was not made in fact for several years afterward, indeed not until this litigation began, but doubtless it was agreed on and was the pretext for said receipt; that Morton then paid McCormick any money is negatived by his own subsequent conduct in renewing the first land note in April of the following year for $2,031.14. Whereas if he had made this payment of $2,917 in February, 1861, not only this first note would have been liquidated, but a large credit remained to go upon the next note. Besides, there is no reason given nor perceived why this credit should not have been entered on the

note, if everything had been fair; a prudent man certainly would not have been content with a mere receipt subject to loss and destruction for so large a sum when no serious obstruction intervened to have it placed on the note; these circumstances in connection with the other evidence convince us that the court correctly rejected this credit save the $1,000 paid Bullock & Co.

McCormick seems to have brought no suit upon Morton's last note nor by any amended pleading asked judgment thereon, yet it has been computed by the commissioner in his report and a judgment based thereon which is erroneous.

There are, however, two errors against McCormick, the first as to the manner of computing interest; the commissioner allowed interest on the amount of the several notes from the time due until about the time of his report and then allowed Morton interest on his payments from their respective dates to the same time, whereas the legal manner is to calculate interest on the note down to the first payment, and, if the payment be equal to or larger than the interest, apply the payment first to a discharge of the interest, and apply the remainder to a discharge of the principal, as a creditor has the legal right to have the interest discharged before the principal shall be reduced; the calculation is very simple to arrive at this legal method, merely by adding principal and interest and deducting the payment therefrom, then computing interest on the remainder to the time of the next payment, adding principal and interest and deducting payment, and so on, but this can only be done when the payment is equal to or greater than the interest.

The extension of the time from four to seven annual payments without interest by Coombs to Morton was arranged by the latter with McCormick and without consideration and at a loss by the latter of the interest for this extended time, and we regard it as but legal and equitable under the circumstances of this case that Morton should be held responsible to McCormick for interest on these deferred payments for all time exceeding that of payment from Coombs to McCormick.

There is an item of credit to Morton of $2,400 February 25, 1863, and $300 February 27, 1863, set down — extended $540 with interests on same to October 11, 1863, $117.09 which we do not understand; it looks to be an error in some way, but we merely call attention to it for correction if it be not correct.

The evidence and circumstances do not justify a novation of the contract as set up by Morton. First, because as a majority of this court has held, nothing but gold and silver coin can be made a legal tender which was worth more when this contract is asserted to have been made than paper of the Bank of Kentucky. Second, because Morton did not in reasonable time offer to perform the contract and indeed failed to do so in its most essential features. Third, because we are not satisfied that such a contract with McCormick should be enforced even if it were clearly established. Fullenweder does not complain of the erroneous manner in which interest was computed in his judgment, and as there is no error therein against Morton, it must be affirmed, with damages.

For the errors indicated, the judgment of McCormick against Morton must be reversed upon both the appeal and cross-appeal without costs in this court to either party, with directions to the court below to permit an amended petition bringing the last note of Morton held by McCormick before the court for adjudication and correcting the judgment otherwise as herein indicated.

*Harwood & Lindseys,* for Appellants.

*Bullock & Davis,* for Appellees.